AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

## UNITED STATES DISTRICT COURT
### for the
### Central District of California

| In the Matter of the Search of: | ) ) ) | Case No. 5:24-MJ-00099 |
|---|---|---|
| 235 East Twin Palms Drive, Palm Springs, CA 92264 | | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

   *See Attachment A*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized):*

   *See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C § 331 | Introduction into Interstate Commerce of Misbranded or |
| 21 U.S.C. § 843(a)(4) – (a)(7) | Adulterated Drug; Money Laundering; |
| 18 U.S.C §§ 1956, 1957 | |

The application is based on these facts:

   *See attached Affidavit*

   ☒ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____*)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/
_____
*Applicant's signature*

_____
*Michael Telford, HSI Special Agent*
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____

_____
*Judge's signature*

City and state: Riverside, CA _____

_____
Sheri Pym – United States Magistrate Judge
*Printed name and title*

AUSA: Colin Scott – 213-894-3159

## AFFIDAVIT

I, Michael Telford, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of an application for a warrant to search 235 East Twin Palms Drive, Palm Springs, CA 92264 (the "SUBJECT PREMISES"), as described more fully in Attachment A.

2.    The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of Title 21, United States Code, Sections 331 (introduction into interstate commerce of misbranded or adulterated drug) and 843(a)(4)-(a)(7) (possession of device to manufacture controlled substance), and Title 18, United States Code, Sections 1956 and 1957 (money laundering) (collectively, the "SUBJECT OFFENSES"), as described more fully in Attachment B.  Attachments A and B are incorporated by reference herein.

3.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, the experience of other agents, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all

conversations and statements described in this affidavit are related in substance and in part only and all dates and times are on or about those indicated.

## II. INTRODUCTION

4.   I am a Special Agent ("SA") with Homeland Security Investigations("HSI") and have been so employed since May 2022. Currently, I am assigned to the HSI Palm Springs Office. As part of my current duties, I investigate criminal violations relating to narcotics trafficking, narcotics smuggling, smuggling, and money laundering, including violations of Title 18, United States Code, Sections 545, 1956 and 1957; and Title 21, United States Code, Section 841, 843, 844, and 846. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances and the further laundering of proceeds of narcotics smuggling and trafficking.

5.   I have received training in the area of drug investigations, money laundering, financial investigations and various methods which drug dealers use in an effort to conceal and launder the proceeds of their illicit drug enterprises. I have also participated in investigations involving violations of narcotics laws. I have also participated in investigations that have led to the issuance of warrants involving violations of narcotics laws. As part of my training, I attended and graduated

the Criminal Investigator Training Program, the Diplomatic
Security Service Basic Special Agent Course, and the Homeland
Security Investigations Special Agent Training Course.  Prior to
my employment with HSI I was a Special Agent with the Diplomatic
Security Service where I investigated passport fraud, benefit
fraud, and visa fraud. I have received training in the
enforcement of Title 18, Title 19 and Title 21 statutes. As part
of my training, I received instruction as to the investigation
of smuggling, narcotics, and financial crimes.

6.   I am an "investigative or law enforcement officer"
within the meaning of Section 2510(7) of Title 18, United States
Code; that is, an officer of the United States empowered by law
to conduct investigations of, and to make arrests for, offenses
enumerated in Title 18, United States Code, Section 2516.  I
have conducted investigations regarding the smuggling of
contraband, and I am familiar with the techniques and
methodologies of smugglers. I have participated in drug-
trafficking and human-trafficking investigations, including
physical and electronic surveillance, the use of cooperating
witnesses, questioning of witnesses, controlled delivery of
narcotics, obtaining and analyzing a wide variety of record and
data. I have also been involved in the execution of search
warrants, arrests, and consent searches related to violations of
federal law. These investigative actions have covered the
searches of locations such as vehicles, residences, and
businesses.

3

6.    As an HSI SA, I also work closely with other federal, state, and local law enforcement agencies that specifically investigate the illegal proliferation of drugs and pharmaceuticals. These agencies include the Food and Drug Administration, Office of Criminal Investigations (FDA OCI). FDA OCI has subject matter expertise pertaining to pharmaceuticals and the authority of individuals to sell, manufacture, and distribute pharmaceuticals.

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

7.    HSI, alongside FDA OCI, is investigating the smuggling into the U.S. and sale of suspected sildenafil and tadalafil[1] by Brett ROSS, and the laundering of proceeds of the sales through accounts held by ROSS.  On February 29, 2024, the Honorable Shashi H. Kewalramani, United States Magistrate Judge, issued a warrant to search the SUBJECT PREMISES.  That warrant did not permit the seizure of the items listed in Attachment B of the present application.

8.    On or about March 4, 2024, during the execution of the search warrant of the SUBJECT PREMISES, I discovered multiple encapsulating devices, unknown bulk powder, bags of empty capsules, drug paraphernalia, and U.S. Currency. A narcotics test of the residue on a pill encapsulating device returned a positive result for amphetamine.

---

[1] Sildenafil and Tadalafil are both prescription substances that are regulated under federal law.

9.    During a Mirandized interview following the execution of the search warrant, ROSS stated that he purchases and uses methamphetamine and fentanyl. ROSS also stated that he has been selling products containing Sildenafil and Tadalafil for approximately 10 years. ROSS stated that he sells products containing Sildenafil and Tadalafil from the SUBJECT PREMISES.

### IV. <u>STATEMENT OF PROBABLE CAUSE</u>

15.    Based on my training and experience, my personal involvement in this investigation, my discussions with other law enforcement officer, my review of law enforcement databases, and my review of reports and other documents prepared by other law enforcement officers, I know the following.

### A.    Agents Obtain a Search Warrant for the SUBJECT PREMISES

16.    On February 29, 2024, Judge Kewalramani issued a warrant to search the SUBJECT PREMISES in Case No. 5:24-mj-3747. In support of the application for the search warrant, I submitted an affidavit detailing how law enforcement's investigation revealed that ROSS was operating a website "palmspringsbabyblues.com" which offered unregulated pharmaceuticals for sale from the SUBJECT PREMISES and that ROSS had offered to sell his illegal wares to undercover law enforcement agents via text message. A true and correct copy of the search warrant application - including my declaration filed

5

in support of it – is attached hereto as **Exhibit 1**, which is incorporated by reference.

17.   Judge Kewalramani authorized the search of the SUBJECT PREMISES but did not authorize law enforcement to seize pill making devices, U.S. currency, scales, or empty gel capsules. This warrant seeks authorization to seize those items.

**B.    Agents Execute Search Warrant at SUBJECT PREMISES**

18.   On or about March 4, 2024, during the execution of the search warrant for the SUBJECT PREMISES, HSI SA Sean Doyle discovered a plexiglass device with depressions with white powder residue on and around them which he showed to me.

19.   Based on my training and experience, I believe this device is used to hold capsules during the process of filling them with pharmaceuticals. This device was found in the common area of the SUBJECT PREMISES on a cart along with bags of empty capsules. I conducted a test for narcotics using an MX-908 drug testing device.[2] The powder residue found on the machine tested positive for amphetamine. Based on my training and experience, I know that individuals involved in manufacturing and distributing drugs will use devices to manufacture capsules or pills containing illicit substances for the purpose of sale. A photo of the pill encapsulating device is below.

---

[2] An MX908 is a multi-mission handheld, portable mass spectrometer used to conduct tests of unknown chemicals, drugs, and explosive residue. MX908 devices detect and identify trace-level chemical, explosive, and drug residue.

6



20.   During the search, HSI SA Doyle discovered additional encapsulating devices located in a bedroom closet of the SUBJECT PREMISES. HSI SA Doyle observed a substance on a table located in the common area of the SUBJECT PREMISES that appeared to be methamphetamine. SA Doyle also observed pipes which are used to smoke drugs located in a bedroom of the SUBJECT PREMISES.

21.   ROSS, during a Mirandized interview, told FDA OCI SA Errol Watson and me that he manufactures a product containing both Sildenafil and Tadalafil at the SUBJECT PREMISES. ROSS stated that he purchases bulk powder which he believes contains Sildenafil and Tadalafil. ROSS stated that he combines the powders to produce a product he refers to as "Candy Blue Bombs." ROSS further stated that he uses both fentanyl and methamphetamine and purchases these drugs from an individual known as "Dave." ROSS also stated that he has approximately $12,000.00 in U.S. currency which ROSS stated were proceeds from the sale of Sildenafil and Tadalafil.

22.   When questioned regarding the positive narcotics test of the residue found on the pill encapsulating device discovered in the common area, ROSS denied using the device to manufacture items containing amphetamines.

## V.   <u>TRAINING AND EXPERIENCE ON PHARMACEUTICAL and DRUG OFFENSES</u>

45.   From my training, personal experience, and the collective experiences related to me by other law enforcement officers who conduct pharmaceutical and drug investigations, I am aware of the following:

a.   Persons who illegally import, purchase, or sell pharmaceuticals and drugs, likely store pharmaceuticals and drugs, prohibited items, and evidence of possession and sale on their person, in their residence, and in vehicles that they control.

b.   Persons who possess, purchase, or sell pharmaceuticals and drugs generally maintain records of their transactions as items of value and usually keep those records in their residence, or in places that are readily accessible, and under their physical control, such in their digital devices, on their person, and in residences and vehicles that they control. It has been my experience that those who engage in the illegal sale of pharmaceuticals will keep the contact information of the individuals or entities who supplying pharmaceuticals for future purchases or referrals.  Such information is also commonly kept on digital devices on their person, at residences and vehicles

8

they control, or in physical records stored at residences and vehicles they control.

c.    Correspondence between persons buying and selling pharmaceuticals and drugs, including correspondence between co-conspirators in the dealing of pharmaceuticals or drugs, often occurs over phone calls, e-mail, text message, and social media message to and from smartphones, laptops, or other digital devices.  This includes sending photos of the pharmaceuticals and drugs between the seller and the buyer, as well as negotiation of price.  In my experience, individuals who engage in illegal sales of pharmaceuticals and drugs frequently use phone calls, e-mail, and text messages to communicate with each other regarding pharmaceuticals and drugs that they sell or offer for sale.  In addition, it is common for individuals engaging in the unlawful sale of pharmaceuticals and drugs to have photographs of pharmaceuticals or drugs and/or they or other individuals working with them possess on their cellular phones and other digital devices as they frequently send these photos to each other to facilitate sales of pharmaceuticals and drugs.  Digital devices containing such evidence are often kept on the person and in residences and vehicles.

d.    Many people also keep mementos of their transactions, including digital photographs or recordings of themselves possessing pharmaceuticals/drugs on their digital devices, or of pharmaceuticals and or drugs that they wish to sell to others.  These photographs and recordings are often shared via social media, text messages, and over text messaging

applications.  Digital devices containing such evidence are often kept on the person and in residences and vehicles.

      e.    Individuals engaged in the illegal sale of pharmaceuticals and drugs often use multiple digital devices.

## VI. <u>CONCLUSION</u>

46.  For all the reasons described above, there is probable cause to believe that the items to be seized described in Attachment B will be found in a search of the SUBJECT PREMISES, described in Attachments A.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 4th day of
March, 2024.

_____
HONORABLE SHERI PYM
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

## **PREMISES TO BE SEARCHED**

The SUBJECT PREMISES is located at 235 East Twin Palms Drive, Palm Springs, CA 92264.  The SUBJECT PREMISES is a condominium, with an enclosed patio. The SUBJECT PREMISES is located on the north-side of a larger structure and has large glass windows facing a north-south running walkway. The premises to be searched includes all garages visibly assigned to the SUBJECT PREMISES.



**ATTACHMENT B**

**I. <u>ITEMS TO BE SEIZED</u>**

1.    The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of Title 21, United States Code, Sections 331 (introduction into interstate commerce of misbranded or adulterated drug) and 843(a)(4)-(a)(7) (possession of device to manufacture controlled substance), and Title 18, United States Code, Sections 1956 and 1957 (money laundering) (collectively, the "SUBJECT OFFENSES"), namely:

a.    pill presses, capsules, capsule making or filling devices and implements, scales and other weighing devices; and

b.    Cash, currency, financial instruments, and records relating to controlled substances income and expenditures of proceeds of illicit transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money made from illicit activities.

Exhibit 1

AO 93C  (Rev. 8/18) Warrant by Telephone of Other Reliable Electronic Means                                    ☐ Original      ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Central District of California

| | |
|---|---|
| In the Matter of the Search of 235 East Twin Palms Drive, Palm Springs, CA 92264 | )  )  )  )  )  )  )  ) |

Case No.  5:24-MJ-00078

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

     An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Central District of California *(identify the person or describe the property to be searched and give its location)*:

    *See Attachment A-1*

    I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

    *See Attachment B*

    Such affidavit(s) or testimony are incorporated herein by reference and attached hereto.

    **YOU ARE COMMANDED** to execute this warrant on or before <u>14 days from the date of its issuance</u> *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

    Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

    The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>the U.S. Magistrate Judge on duty at the time of the return through a filing with the Clerk's Office.</u>

    ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for____days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   <u>2/29/24 at 5:45 p.m.</u>

                                                        *Judge's signature*

City and state:     <u>Riverside, CA</u>            <u>Shashi H. Kewalramani - United States Magistrate Judge</u>
                                                                   *Printed name and title*

AUSA: Colin Scott – 213-894-3159

AO 93C  (Rev. 8/18) Warrant by Telephone of Other Reliable Electronic Means (Page 2)

Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

<u>**AFFIDAVIT**</u>

I, Michael Telford, being duly sworn, declare and state as follows:

## I.  <u>PURPOSE OF AFFIDAVIT</u>

1.    This affidavit is made in support of an application for a warrant to search 235 East Twin Palms Drive, Palm Springs, CA 92264 (the "SUBJECT PREMISES"), as described more fully in Attachment A-1, the person of Brett ROSS ("ROSS"), as described more fully in Attachment A-2, and a 2017 Jeep bearing CA License Plate 8AMU692 (the "SUBJECT VEHICLE"), as described more fully in Attachment A-3.

2.    The requested search warrants seek authorization to seize evidence, fruits, or instrumentalities of violations of Title 21, United States Code, Section 331 (Introduction into Interstate Commerce of Misbranded or Adulterated Drug), Title 18, United States Code, Sections 545 (Smuggling Goods into the United States), and 1343 (Wire Fraud), collectively, the "SUBJECT OFFENSES"), as described more fully in Attachment B. Attachments A-1, A-2, and A-3 and B are incorporated by reference herein.

3.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, the experience of other agents, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable

cause for the requested search warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only and all dates and times are on or about those indicated.

## II. INTRODUCTION

4.   I am a Special Agent ("SA") with Homeland Security Investigations ("HSI") and have been so employed since May 2022. Currently, I am assigned to the HSI Palm Springs Office. As part of my current duties, I investigate criminal violations relating to narcotics trafficking, narcotics smuggling, smuggling, and money laundering, including violations of Title 18, United States Code, Sections 545, 1956 and 1957; and Title 21, United States Code, Sections 841 and 846.  I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances and the further laundering of proceeds of narcotics smuggling and trafficking.  I have received training in the area of narcotics investigations, money laundering, financial investigations and various methods which drug dealers use in an effort to conceal and launder the proceeds of their illicit drug enterprises.  I have also participated in investigations involving violations oof narcotics laws. I have also participated in investigations that

have led to the issuance of warrants involving violations of
narcotics laws. As part of my training, I attended and graduated
the Criminal Investigator Training Program, the Diplomatic
Security Service Basic Special Agent Course, and the Homeland
Security Investigations Special Agent Training Course.  Prior to
my employment with HSI, I was a Special Agent with the
Diplomatic Security Service, where I investigated passport
fraud, benefit fraud, and visa fraud.  I have received training
in the enforcement of Title 18, Title 19 and Title 21 statutes.
As part of my training, I received instruction as to the
investigation of smuggling, narcotics, and financial crimes.

        5.   I am an "investigative or law enforcement officer"
within the meaning of Section 2510(7) of Title 18, United States
Code; that is, an officer of the United States empowered by law
to conduct investigations of, and to make arrests for, offenses
enumerated in Title 18, United States Code, Section 2516.  I
have conducted investigations regarding the smuggling of
contraband, and I am familiar with the techniques and
methodologies of smugglers.  I have participated in drug-
trafficking and human-trafficking investigations, including
physical and electronic surveillance, the use of cooperating
witnesses, questioning of witnesses, controlled delivery of
narcotics, obtaining and analyzing a wide variety of record and
data.  I have also been involved in the execution of search
warrants, arrests, and consent searches related to violations of
federal law. These investigative actions have covered the

searches of locations such as vehicles, residences, and businesses.

6.   As an HSI SA, I also work closely with other federal, state, and local law enforcement agencies that specifically investigate the illegal proliferation of narcotics and pharmaceuticals.  These agencies include the Food and Drug Administration, Office of Criminal Investigations (FDA OCI). FDA OCI has subject matter expertise pertaining to pharmaceuticals and the authority of individuals to sell, manufacture, and distribute pharmaceuticals.

### III. SUMMARY OF PROBABLE CAUSE

8.   HSI, alongside FDA OCI, is investigating the smuggling into the U.S. and sale of suspected sildenafil and tadalafil[1] by ROSS, and the laundering of proceeds of the sales through accounts held by ROSS.

9.   U.S. Customs and Border Protection have seized approximately 2,200 pills in four parcels containing suspected sildenafil being imported into the United States with a listed consignee of Brett Michael ROSS at "235 East Twin Palms Drive, Palm Springs, California 92264" (i.e., the SUBJECT PREMISES).

10.  HSI has identified a website "palmspringsbabyblues.com" (the "SUBJECT WEBSITE"), which offers sildenafil and tadalafil for sale without a prescription.  The SUBJECT WEBSITE offers shipping options and a pickup option at

---

[1] Sildenafil and Tadalafil are both prescription substances that are regulated under federal law.

the SUBJECT PREMISES.  The SUBJECT WEBSITE offers payment
options including Cash App, Zelle, and Venmo.  The SUBJECT
WEBSITE lists a contact phone number of 818-605-4438, which has
a listed subscriber of ROSS.  Additionally, the SUBJECT WEBSITE
offers options for shipping or pickup at the SUBJECT PREMISES.

11. FDA OCI has conducted an undercover purchase of items
from the SUBJECT WEBSITE and the items were sent from California
to Pennsylvania with a U.S. Postal Service shipping label.  The
items purchased contained sildenafil and tadalafil.

12. HSI in an undercover capacity has communicated via
text with an individual believed to be ROSS using phone number
818-605-4438, which is subscribed to ROSS.  In these
conversations, the user of phone number 818-605-4438 offered to
sell and ship items containing sildenafil and/or tadalafil to
the undercover law enforcement agent.

## IV. <u>STATEMENT OF PROBABLE CAUSE</u>

15.  Based on my training and experience, my personal
involvement in this investigation, my discussions with other law
enforcement officer, my review of law enforcement databases, and
my review of reports and other documents prepared by other law
enforcement officers, I know the following:

### A.   Background on Inspection of Parcels at the Border

16.  U.S. Customs and Border Protection ("CBP") must first
examine and admit international mail parcels and shipments that
arrive in the United States before those parcels are delivered

to their destinations by a carrier, including the United States Postal Service ("USPS").  CBP officers assigned to International Mail Facilities ("IMF") and Centralized Examination Stations ("CES") conduct routine examinations of parcels shipped from other countries to the United States.  The examination takes place before the parcels are prepared for delivery to their final destination within the United States.

17.  These examinations are conducted pursuant to CBP's authority under Title 19, Code of Federal Regulations, Section 162.6, which provides that CBP officers and other law enforcement officers may generally conduct examinations of goods entering the United States at a border without a search warrant, probable cause, or individualized suspicion.[2]

18.  According to CBP officers at the IMF in Torrance, California, due to the large volume of cargo that enters the United States daily, CBP is unable to examine every parcel.  Thus, CBP uses a variety of methods to select parcels for border search examination, including both random and targeted inspections.  CBP officers who find prohibited items within examined parcels will take note of specific information about the package, such as the sender, addressees, consignees, commodity descriptions, and weight.  Under normal circumstances, international mail parcels are accompanied by a customs declaration that describes the parcel's contents.  That

---

[2] I am also aware that searches at the border do not require probable cause or a warrant.  United States v. Ramsey, 431 U.S. 606, 619 (1977).

declaration is stored in law enforcement databases accessible by CBP and HSI.  Based on this information, CBP officers target packages that match certain specified criteria.

**B.   Background on Sildenafil and Tadalafil**

19.   I know from open-source research that Sildenafil is a regulated pharmaceutical drug available in the United States with a prescription from a licensed medical professional. Sildenafil is commonly prescribed for the treatment of erectile dysfunction and pulmonary arterial hypertension. I understand from open-source research that Sildenafil should not be taken with nitrates or alpha-blockers. The use of Sildenafil when combined with nitrates or alpha-blocker medications may cause the user to experience a sudden and unsafe drop in blood pressure, causing dizziness, fainting, heart attack, or stroke. The use of both Sildenafil and nitrates can lead to hypotension and can be fatal to the user.

20.   I know from open-source research that Tadalafil is also a regulated pharmaceutical drug available in the United States with a prescription from a licensed medical professional. Tadalafil is prescribed to treat erectile dysfunction, benign prostatic hyperplasia, and pulmonary arterial hypertension. Tadalafil should not be taken with blood pressure medications containing nitrates or alpha-blockers.  A combination of Tadalafil and nitrates or alpha-blocker medications can cause a user to experience a sudden and unsafe drop in blood pressure, causing dizziness, fainting, heart attack, or stroke.

21.  I know that the importation of Sildenafil is regulated by 21 U.S.C. § 355, which states: "No person shall introduce or deliver for introduction into interstate commerce any new drug, unless an approval of an application filed pursuant to subsection (b) or (j) is effective with respect to such drug."

22.  On or about October 5, 2023, FDA OCI SA Pettigrew told me that he searched Drugs@FDA, an FDA database, which lists drugs approved for consumption in the United States.  According to SA Pettigrew, Drugs@FDA did not list any product named Erex or SAMOK OVERSEAS which means that is not approved for distribution in the United States.

**C.   Seizures of Multiple Parcels Containing Suspected Sildenafil Entering the United States**

21.  Per my review of law enforcement records, I know that on or about March 10, 2022, Customs and Border Protection Officers at the JFK Mail Branch in New York identified a parcel imported from India ("Parcel 1") with approximately 550 pills containing suspected sildenafil, with an approximate value of $33,000.00.  The listed consignee on Parcel 1 was Brett Michael ROSS with a consignee address of the SUBJECT PREMISES. Customs and Border Protection Officers seized Parcel 1 pursuant to 19 U.S.C. § 1526(e), 15 U.S.C. § 1124, and 19 C.F.R. 133.21(e).

22.  On or about January 22, 2023, Customs and Border Protection Officers at the JFK Mail Branch in New York identified a parcel from India ("Parcel 2") containing approximately 550 pills containing suspected sildenafil, with an approximate value of $33,000.00.  The listed consignee on Parcel

2 was Brett Michael ROSS with a consignee address of the SUBJECT
PREMISES. Customs and Border Protection Officers seized Parcel 2
pursuant to 19 U.S.C. § 1526(e), 15 U.S.C. § 1124, and 19 C.F.R.
133.21(e).

23.  On or about February 1, 2023, Customs and Border
Protection Officers at the JFK Mail Branch in New York
identified a parcel from India ("Parcel 3") containing
approximately 550 pills containing suspected sildenafil, with an
approximate value of $33,000.00. The listed consignee on Parcel
3 was Brett Michael ROSS with a consignee address of the SUBJECT
PREMISES.  Customs and Border Protection Officers seized Parcel
3 pursuant to 19 U.S.C. § 1526(e), 15 U.S.C. § 1124, and 19
C.F.R. 133.21(e).

24.  On or about February 11, 2023, Customs and Border
Protection Officers at the JFK Mail Branch in New York
identified a parcel from India ("Parcel 4") containing
approximately 550 pills containing suspected sildenafil, with an
approximate value of $33,000.00.  The listed consignee on Parcel
4 was Brett Michael ROSS with a consignee address of the Subject
Premises. Customs and Border Protection Officers seized Parcel 4
pursuant to 19 U.S.C. § 1526(e), 15 U.S.C. § 1124, and 19 C.F.R.
133.21(e).

25. Based on my review of law enforcement records, I know
that on or about March 13, 2023, Customs and Border Protection
sent a notice to ROSS, via certified mail, to the SUBJECT
PREMISES, informing him of the seizure of Parcel 3 and the

violations of 19 U.S.C. 1526(e), 15 U.S.C. 1124, and 19 C.F.R. 133.21(e).

     26. Based on my review of law enforcement records, I know that, on or about March 23, 2023, Customs and Border Protection sent a notice to ROSS, via certified mail, to the SUBJECT PREMISES informing him of the seizure of Parcel 4 and the violations of 19 U.S.C. 1526(e), 15 U.S.C. 1124, and 19 C.F.R. 133.21(e).

     27. On or about October 4, 2023, I viewed the tablets which were seized from Parcel 3. I observed that the tablets were light blue in color and bore a resemblance to Viagra.  I observed that the pills were in plastic and aluminum blister packages.  The foil side of the blister pack identified the manufacturer as SAMOK OVERSEAS and the brand name as EREX. Below are photographs of the tablets and the blister packaging.





28. On or about December 12, 2023, I received from FDA OCI SA Zeva Pettigrew lab analysis of ten tablets from Parcel 3 which confirmed that they contained sildenafil.

29. I know from discussions with other law enforcement officers that on or about July 18, 2023, HSI Special Agent Peter Adamo requested and received phone records from AT&T for phone number 818-605-4438.  The subscriber information provided by AT&T listed ROSS as the subscriber of the phone number with a subscriber address of the SUBJECT PREMISES.

**D.   Law Enforcement Identifies the Subject Website As An Unlawful Distributor Of Prescription Drugs**

30. On or about March 06, 2023, I received information from HSI Headquarters regarding the existence of a website operating with the name "PalmSpringsBabyBlues.com" offering pills containing 100 milligrams of Sildenafil per pill.  The website listed a phone number of 818-605-4438, the same number

identified as belonging to ROSS above, as the contact information for the website.

31. On or about September 13, 2023, I visited "palmspringsbabyblues.com" and determined that the site was offering three items for sale. The description below each item was the following "Baby Blues", "Magic Yellows", and "Oral Jelly". The item listed as "Baby Blues" (hereinafter referred to as "Item 1"), appeared to be blue pills in a plastic and aluminum foil blister pack which bore a strong resemblance to the pharmaceutical drug known to me as Viagra and was priced at $40.00 per blister pack.  I know from open-source investigation that the active ingredient in Viagra is Sildenafil Citrate. Sildenafil Citrate is available only with a prescription from a licensed medical provider.

32.  The item listed as "Magic Yellows" (hereinafter referred to as "Item 2"), appeared to be yellow pills in two plastic and aluminum foil blister packs which bore a strong resemblance to the pharmaceutical drug known to me as Cialis and was priced at $60.00 per blister pack.  I know from open-source investigation that the active ingredient in Cialis is tadalafil which, as described above, is a controlled substance as defined by the Food and Drug Administration.

33.  Based on my training and experience, I know that both Tadalafil and Sildenafil Citrate are Phosphodiesterase-5 Inhibitors which are regulated by the Food and Drug Administration and are only approved for use with a prescription.

34.  The item listed as "Oral Jelly" (hereinafter referred to as "Item 3"), appeared to be a box with the label "Kamini" and was priced at $40.00.  "Kamini" refers to an Indian Herbal supplement for the treatment of erectile disfunction.

35. I also observed that the website offered options for shipping or "Store Pickup" at the SUBJECT PREMISES.  The shipping options included Standard Shipping with expected delivery within three to five business days, Expedited Shipping with expected delivery within two to three business days, and Overnight Shipping.

36. I observed that the website advertised accepting payment through "Cash App," "Zelle," and "Venmo."  Based on my training and experience, I know that individuals involved in illicit activity often use mobile applications to receive and send funds to avoid detection by law enforcement.

37. Additionally, phone number 818-605-4438 was listed as a contact number on the website.  This phone number is same the phone number previously subpoenaed by HSI SA Adamo and registered to ROSS.  Below is a screen capture of the website checkout page:



**E.   Surveillance Of Subject Premises Confirms Ross Is the Occupant**

38.   On or about September 13, 2023, I conducted surveillance of the SUBJECT PREMISES.  During the surveillance, I observed a Silver Jeep Grand Cherokee bearing California license plate 8AMU692 (the "SUBJECT VEHICLE").  I checked law enforcement databases and determined that the registered owner of the SUBJECT VEHICLE was listed as ROSS with the vehicle registered to the SUBJECT PREMISES.

39.   On or about January 31, 2024, I conducted surveillance of the SUBJECT PREMISES.  During the surveillance I observed

the SUBJECT VEHICLE parked in a parking space for the complex in which the SUBJECT PREMISES is located.

40.  On or about February 1, 2024, I conducted surveillance of the SUBJECT PREMISES during which I observed the SUBJECT VEHICLE again parked in a parking spot for the complex in which the SUBJECT PREMISES is located.  I also observed a male I believed to be ROSS exit the north/south running sidewalk which provides access to the front door of the SUBJECT PREMISES with what appeared to be an envelope in his hand, pictured below.  I observed the male enter the SUBJECT VEHICLE with the package and depart the area.  I know from an undercover purchase of items from the SUBJECT WEBSITE that items containing Sildenafil and Tadalafil were sent in a padded envelope resembling the envelope I observed ROSS carrying when he entered the SUBJECT VEHICLE.  I believe that ROSS was leaving the SUBJECT PREMISES to drop off a package for delivery to a client.



**F.    Ross Offers To Sell Law Enforcement Unlicensed Drugs**

41.    On or about September 19, 2023, I contacted phone number 818-605-4438 via text message pretending to be an individual interested in purchasing pills.  During a text exchange with the user of 818-605-4438, an individual who I believe to be ROSS relayed that he was able to supply "Baby

Blues," "Magic Yellows," and "Oral Gels," which correspond to Items 1, Item 2, and Item 3 previously observed on the website.

42.  The user of 818-605-4438 stated that his name was "Brett" and that his home was his "store front" and provided the address of the SUBJECT PREMISES.  The user of 818-605-4438 volunteered that he also had "Candy Blue Bombs" for sale for $60 for a "ten pack."  The user of 818-605-4438 described the Candy Blue Bombs as having "both sildenafil and tadalafil in them."  As discussed above, both sildenafil and tadalafil are prescription substances.

43.  The user of 4818-605-4438 in text messages with me stated that "I process transactions on the daily."  Based on the SUBJECT WEBSITE's option to pick up at the SUBJECT PREMISES, the statements made by the user of 818-605-4438 providing an option for pickup at the SUBJECT PREMISES, the user of 818-605-4438 stating his name was "Brett," and the vehicle registered to the SUBJECT PREMISES, I believe the user of 818-605-4438 to be ROSS.

44. On or about October 20, 2023, I received the following text message from phone number 818-605-4438: "Are you interested in placing an order for dick pills and sex capsules?"  I believe this text message is referring to the pills containing Sildenafil and Tadalafil previously described in my text communications with 818-605-4438 on or about September 19, 2023.

45. On or about October 21, 2023, I was again contacted by 818-605-4438 via text.  During this text conversation the user

of 818-605-4438, believed to be ROSS, stated "I can always mail
the product to you."  Based on this statement I believe ROSS
was offering to use the U.S. Mail Service and/or other shipping
services to distribute pharmaceuticals.

### G. Law Enforcement Conducts A Controlled Purchase From The Subject Website

42.  On or about October 16, 2023, an FDA OCI Undercover
Agent ("UCA") working in an undercover capacity purchased one
Baby Blues, Ten Pack; one Magic Yellows, Ten Pack; and one Oral
Jelly, Seven Pack from the SUBJECT WEBSITE.  The UCA received a
confirmation email of the purchase from the email address "no-
reply@my.store-emails.com" which listed a reply email address
of gethardnow@palmspringsbabyblues.com.  The confirmation email
stated that payment could be made via Cash App, Zelle, or
Venmo.  The UCA purchase requested shipment to an address in
Pittsburgh, PA.

43.  On or about October 30, 2023, the UCA received a
package which bore a U.S. Postal Service shipping label.  The
shipping label listed a return address as "Brett Michael ROSS,
Palm Springs Baby Blues, 235 E Twin Palms Dr, Palm Springs, CA
92264."  The package contained one blister package containing
10 blue pills, one blister package containing 10 yellow pills,
and one box of Kamini Oral Jelly containing seven sachets. The
blister package containing the 10 blue pills identified the
pills as Sildenafil Citrate Tablets containing 100mg of
Sildenafil.  These bore a strong resemblance to the pills
seized previously at the JFK Mail Facility.  The blister

package containing the 10 yellow pills identified the pills as Tadalafil Tablets 20mg.  The box containing the Kamini Oral Jelly identified the contents as Sildenafil oral jelly 100mg.

44.  On or about December 19, 2023, I learned from FDA OCI Pettigrew that the FDA Forensic Chemistry Center determined that the blister pack containing 10 blue pills contained Sildenafil, the blister pack containing 10 yellow pills contained Tadalafil, and the Kamini Oral Jelly contained Sildenafil.

### H.   Ross Does Not Have A License To Sell Sildenafil Or Tadalafil

40.  On or about September 20, 2023, I conducted a search of California's Physician's Licenses using the California Medical Board of California's website (https://www.mbc.ca.gov/) for the name Brett ROSS and the Business Name "Shades of Blue Inc."  A review of the records did not return any active licenses for doctors under the name ROSS in Palm Springs or businesses in California in the name of Shades of Blue Inc.

### I.   Ross Applies For Multiple Fraudulent Economic Injury Disaster Loan To Support His Illegal Business

45.  From a review of records from the Small Business Administration ("SBA") I observed that on or about March 31, 2020, ROSS applied for an Economic Injury Disaster Loan ("EIDL") for a business in the name of PALM SPRINGS BABY BLUES (Application 3600258441).  I observed a loan authorization and agreement dated on or about June 1, 2020, for an EIDL in the amount of $20,000.00 for the borrower Palm Springs Baby Blues.

46.  Per my review of Application Number 3600258441, I observed that question 2 on the application was "Applicant is not engaged in any illegal activity (as defined by Federal guidelines)."  I observed that the response to the question was "Yes".  The importation, distribution, and sale of sildenafil and tadalafil without a license is a violation of Title 21 U.S. Code.

47.  Based upon my review of Bank of America records I observed that on or about June 8, 2020, Bank of America Account 001846169239 received a transfer of $20,000.00 from "SBAD TREAS" which I understand to be disbursement from the SBA. Bank of America Account 001846169239 is a personal checking account with an authorized user of ROSS.

48.  Per my review of Bank of America records, I observed that ROSS opened both a business checking and savings account on or about January 22, 2019.  The disbursement of funds from SBA was not to either the business checking account or the business savings account.

49.  Per my review of SBA records, I also observed that on or about April 4, 2020, ROSS submitted a second application for an EIDL for "Palm Springs Baby Blues" (Application Number 3600793869).  Per my review of Application Number 3600793869 records, I observed that question two on the application was "Applicant is not engaged in any illegal activity (as defined by Federal guidelines)."  I observed that the answer to question two was "Yes".  Per my review of other documents associated with Application Number 3600793869, the loan was not

funded. I observed the following messages on associated documents from SBA: "Public records search did not find business," "Bank account could not be confirmed to be associated with the business," "Applicant is not located in a low income area."

50.  Per my review of SBA records, on or about April 12, 2020, ROSS submitted a third application for an EIDL (Application Number 3601195909) for the business "Palm Springs Baby Blues." Per my review of Application Number 3601195909 records, I observed that the second question on Application Number 3601195909 was "Applicant is not engaged in any illegal activity (as defined by Federal guidelines)." I observed that the response to question two was "Yes". Per my review of documents associated with Application Number 3601195909, I observed that the loan was not funded and that messages stated "Public record search did not find business," "Bank account could not be confirmed to be associated with the business," and "Applicant is not located in a low income area."

## V.  <u>TRAINING AND EXPERIENCE ON PHARMACEUTICAL and MONEY LAUNDERING OFFENSES</u>

45.  From my training, personal experience, and the collective experiences related to me by other law enforcement officers who conduct pharmaceutical and money laundering investigations, I am aware of the following:

a.  Persons who illegally import, purchase, or sell pharmaceuticals, likely store pharmaceuticals, prohibited items,

and evidence of possession and sale on their person, in their residence, and in vehicles that they control.

b.   Persons who possess, purchase, or sell pharmaceuticals generally maintain records of their transactions as items of value and usually keep those records in their residence, or in places that are readily accessible, and under their physical control, such in their digital devices, on their person, and in residences and vehicles that they control.  It has been my experience that those who engage in the illegal sale of pharmaceuticals will keep the contact information of the individuals or entities who supplying pharmaceuticals for future purchases or referrals.  Such information is also commonly kept on digital devices on their person, at residences and vehicles they control, or in physical records stored at residences and vehicles they control.

c.   Correspondence between persons buying and selling pharmaceuticals, including correspondence between co-conspirators in the dealing of pharmaceuticals or the illegal importation of pharmaceuticals, often occurs over phone calls, e-mail, text message, and social media message to and from smartphones, laptops, or other digital devices.  This includes sending photos of the pharmaceuticals between the seller and the buyer, as well as negotiation of price.  In my experience, individuals who engage in illegal sales of pharmaceuticals frequently use phone calls, e-mail, and text messages to communicate with each other regarding pharmaceuticals that they sell or offer for sale.  In addition, it is common for

individuals engaging in the unlawful sale of pharmaceuticals to
have photographs of pharmaceuticals they or other individuals
working with them possess on their cellular phones and other
digital devices as they frequently send these photos to each
other to facilitate sales of pharmaceuticals.  Digital devices
containing such evidence are often kept on the person and in
residences and vehicles.

       d.   Many people also keep mementos of their
transactions, including digital photographs or recordings of
themselves possessing pharmaceuticals on their digital devices,
or of pharmaceuticals that they wish to sell to others.  These
photographs and recordings are often shared via social media,
text messages, and over text messaging applications.  Digital
devices containing such evidence are often kept on the person
and in residences and vehicles.

       e.   Individuals engaged in the illegal sale of
pharmaceuticals and money laundering often use multiple digital
devices.

       f.   Individuals engaged in the illegal sale of
pharmaceuticals and money laundering often possess firearms to
protect themselves, the pharmaceuticals, and money from others.

## VI. <u>TRAINING AND EXPERIENCE ON DIGITAL DEVICES</u>[3]

24.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.  Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b.  Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents,

---

[3] As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as paging devices, mobile telephones, and smart phones; digital cameras; gaming consoles; peripheral input/output devices, such as keyboards, printers, scanners, monitors, and drives; related communications devices, such as modems, routers, cables, and connections; storage media; and security devices.

programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c.    The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d.    Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

25. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it can take a substantial period of time to search a digital device for many reasons, including the following:

a.    Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus,

often a controlled environment with specially trained personnel
may be necessary to maintain the integrity of and to conduct a
complete and accurate analysis of data on digital devices, which
may take substantial time, particularly as to the categories of
electronic evidence referenced above.

b.   Digital devices capable of storing multiple
gigabytes are now commonplace.  As an example of the amount of
data this equates to, one gigabyte can store close to 19,000
average file size (300kb) Word documents, or 614 photos with an
average size of 1.5MB.

26.  The search warrant requests authorization to use the
biometric unlock features of a device, based on the following,
which I know from my training, experience, and review of
publicly available materials:

a.   Users may enable a biometric unlock function on
some digital devices.  To use this function, a user generally
displays a physical feature, such as a fingerprint, face, or
eye, and the device will automatically unlock if that physical
feature matches one the user has stored on the device.  To
unlock a device enabled with a fingerprint unlock function, a
user places one or more of the user's fingers on a device's
fingerprint scanner for approximately one second.  To unlock a
device enabled with a facial, retina, or iris recognition
function, the user holds the device in front of the user's face
with the user's eyes open for approximately one second.

b.   In some circumstances, a biometric unlock
function will not unlock a device even if enabled, such as when

a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts.  Thus, the opportunity to use a biometric unlock function even on an enabled device may exist for only a short time.  I do not know the passcodes of the devices likely to be found in the search.

c.   Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress ROSS's thumb and/or fingers on the device(s); and (2) hold the device(s) in front of ROSS's face with his or her eyes open to activate the facial-, iris-, and/or retina-recognition feature.

46.  Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## VII. <u>CONCLUSION</u>

47.  For all the reasons described above, there is probable cause to believe that the items to be seized described in Attachment B will be found in a search of the SUBJECT PREMISES, ROSS, and the SUBJECT VEHICLE described in Attachments A-1, A-2, and A-3.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 29 day of February, 2024.


/s/
_____
HONORABLE SHASHI H. KEWALRAMANI
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A-1

## PREMISES TO BE SEARCHED

The SUBJECT PREMISES is located at 235 East Twin Palms Drive, Palm Springs, CA 92264.  The SUBJECT PREMISES is a condominium, with an enclosed patio. The SUBJECT PREMISES is located on the north-side of a larger structure and has large glass windows facing a north-south running walkway. The premises to be searched includes all garages, ~~sheds, and storage areas in close proximity~~ to the SUBJECT PREMISES.

visibly assigned



**ATTACHMENT B**

## I. ITEMS TO BE SEIZED

1.    The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of Title 18 U.S.C. §§ 545 (Smuggling of Goods into the United States) and 1343 (Wire Fraud), and Title 21, United States Code, Section 331 (Introduction into Interstate Commerce of Misbranded or Adulterated Drug) (collectively, the "SUBJECT OFFENSES"), namely:

a.    Pharmaceuticals and Pharmaceutical-related items, including bulk tablets, bulk powders containing sildenafil, bulk powders containing Tadalafil, pill presses, capsules, capsule making or filling devices and implements, scales and other weighing devices, plastic baggies, food saver sealing devices, heat sealing and canning devices, balloons, packaging and shipping materials, aromatic substances such as laundry soap, dryer sheets, air fresheners, or axle grease, containers, and money counters;

b.    Any pills, tablets, capsules, gels, or other products containing sildenafil;

c.    Any pills, tablets, capsules, gels or other products containing tadalafil;

d.    Any pills, tablets, capsules or other products that resemble or appear to be erectile dysfunction prescription drugs, including Cialis, Viagra, Baby Blues, Magic Yellows, Kamini, Baby Blue Bombs;

e.    Documents and records reflecting the identity of,

contact information for, communications with, or times, dates or locations of meetings with co-conspirators, sources of supply of pharmaceuticals, including calendars, address books, telephone or other contact lists, pay/owe records, distribution or customer lists, correspondence, receipts, shipping lists, manifests, commodity descriptions, customs forms, records, and documents noting price, quantities, and/or times pharmaceuticals were bought, sold, or otherwise distributed, whether contained in hard copy correspondence, notes, emails, text messages, photographs, videos (including items stored on digital devices), or otherwise;

   f.    Documents and records pertaining to money laundering activities, including papers reflecting names, addresses, telephone numbers, bank accounts, cryptocurrency accounts, wire transfers, money orders, money remittance records, and other contact or identification data, ledgers (both physical and digital), records of monetary transactions.

   g.    Records reflecting names, nicknames, addresses and telephone numbers of both current and former money laundering associates.

   h.    Cash, currency, financial instruments, and records relating to controlled substances income and expenditures of proceeds of illicit transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money made from illicit activities.

   i.    Documents and records relating to travel by air, bus, car, or other means, including calendars, travel

~~itineraries, maps, airline tickets, baggage check stubs,~~
~~frequent use club membership information, airline, hotel and~~
~~rental car receipts, credit card bills and receipts,~~
~~photographs, videos, passports, and visas;~~

j.   Documents and records reflecting the identity of, contact information for, communications with, or times, dates or locations of meetings with co-conspirators, sources of supply for pharmaceuticals, or pharmaceutical customers, sources of funds, financial records, records that may indicate ownership of cash and funds, including calendars, address books, telephone or other contact lists, hard copy correspondence, notes, photographs, and videos;

~~k.   Documents, records, and other items relating to~~
~~the use of USPS or commercial express mail delivery companies,~~
~~such as FedEx and UPS, to ship drugs or money to various points~~
~~within the United States, including air bills, empty or~~
~~previously used mailing boxes, packing tape, packaging~~
~~materials, package tracking records, and transaction receipts;~~

~~l.   Documents and keys relating to storage units,~~
~~rental cars, safety deposit boxes, or Commercial Mail Receiving~~
~~Agencies;~~

m.   Any items with references to shippers believed to be used to facilitate the SUBJECT OFFENSES;

n.   Any shipping materials related to the SUBJECT OFFENSES, including, but not limited to: envelopes, boxes, and containers;

o.   Any mail packages used to facilitate the SUBJECT

OFFENSES, whether opened or unopened;

        p.   Records showing ownership, dominion, or control over the premises searched, including utility statements and records, journals, records of occupancy, rental or lease agreements, letters, notes, and correspondence;

        q.   Documents and records reflecting the identity of, contact information for, communications with, or times, dates or locations of meetings with co-conspirators, sources of supply of pharmaceuticals, or pharmaceutical customers, including calendars, address books, telephone or other contact lists, hard copy correspondence, and notes;

        r.   ~~United States currency over $1,000 or bearer instruments worth over $1,000 (including cashier's checks, traveler's checks, certificates of deposit, stock certificates, and bonds) (including the first $1,000);~~

        s.   Records, documents, programs, applications, or materials reflecting or relating to payment, receipt, concealment, transfer, or movement of money, including but not limited to bank account records and other financial institution records, wire transfer records, receipts, safe deposit box keys and records, and notes; and

        t.   Records, documents, programs, applications and materials, sufficient to show call log information, including all telephone numbers dialed from any of the digital devices and all telephone numbers accessed through any push-to-talk functions, as well as all received or missed incoming calls;

        u.   Records, documents, programs, applications or

materials, sufficient to show SMS text, email communications or other text or written communications sent to or received from any of the digital devices and which relate to the above-named violations;

v.    Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show instant and social media messages (such as Facebook, Facebook Messenger, Snapchat, FaceTime, Skype, and WhatsApp), SMS text, email communications, or other text or written communications sent to or received from any digital device and which relate to the above-named violations;

w.    Audio recordings, pictures, video recordings, or still captured images related to the purchase, sale, transportation, or distribution of pharmaceuticals;

x.    ~~Global Positioning System ("GPS") coordinates and other information or records identifying travel routes, destinations, origination points, and other locations~~; and

y.    Any digital device which is itself or which contains evidence, contraband, fruits, or instrumentalities of any of the SUBJECT OFFENSES, and forensic copies thereof.

2.    With respect to any digital device used to facilitate the SUBJECT OFFENSES or containing evidence falling within the scope of the foregoing categories of items to be seized:

a.    evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents,

browsing history, user profiles, e-mail, e-mail contacts, chat
and instant messaging logs, photographs, and correspondence;

b.   evidence of the presence or absence of software
that would allow others to control the device, such as viruses,
Trojan horses, and other forms of malicious software, as well as
evidence of the presence or absence of security software
designed to detect malicious software;

c.   evidence of the attachment of other devices;

d.   evidence of counter-forensic programs (and
associated data) that are designed to eliminate data from the
device;

e.   evidence of the times the device was used;

f.   passwords, encryption keys, and other access
devices that may be necessary to access the device;

g.   applications, utility programs, compilers,
interpreters, or other software, as well as documentation and
manuals, that may be necessary to access the device or to
conduct a forensic examination of it;

h.   records of or information about Internet Protocol
addresses used by the device; and

i.   records of or information about the device's
Internet activity, including firewall logs, caches, browser
history and cookies, "bookmarked" or "favorite" web pages,
search terms that the user entered into any Internet search
engine, and records of user-typed web addresses.

3.   As used herein, the terms "records," "documents,"
"programs," "applications," and "materials" include records,

documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

4.   As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes); peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

## II. <u>SEARCH PROCEDURE FOR DIGITAL DEVICE(S)</u>

5.   In searching digital devices or forensic copies thereof, law enforcement personnel executing this search warrant will employ the following procedure:

a.   Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") may search any SUBJECT DEVICE capable of being used to facilitate

the above-listed violations or containing data falling within the scope of the items to be seized.

b.    The search team will, in its discretion, either search each SUBJECT DEVICE where it is currently located or transport it to an appropriate law enforcement laboratory or similar facility to be searched at that location.

c.    The search team shall complete the search of the SUBJECT DEVICES as soon as is practicable but not to exceed 120 days from the date of issuance of the warrant.  The government will not search the digital device(s) and/or forensic images thereof beyond this 120-day period without obtaining an extension of time order from the Court.

d.    The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

i.    The search team may subject all of the data contained in each digital device capable of containing any of the items to be seized to the search protocols to determine whether the device and any data thereon falls within the list of items to be seized.  The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the list of items to be seized.

ii.   The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

iii. The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

e.    The search team will not seize contraband or evidence relating to other crimes outside the scope of the items to be seized without first obtaining a further warrant to search for and seize such contraband or evidence.

f.    If the search determines that a digital device does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the device and delete or destroy all forensic copies thereof.

g.    If the search determines that a digital device does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

h.    If the search determines that a digital device is (1) itself an item to be seized and/or (2) contains data falling within the list of other items to be seized, the government may retain the digital device and any forensic copies of the digital device, but may not access data falling outside the scope of the other items to be seized (after the time for searching the device has expired) absent further court order.

i.    The government may also retain a digital device if the government, prior to the end of the search period, obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending),

including in circumstances where the government has not been able to fully search a device because the device or files contained therein is/are encrypted.

j.   After the completion of the search of the digital devices, the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

6.   The review of the electronic data obtained pursuant to this warrant may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

7.   During the execution of this search warrant, law enforcement is permitted to: (1) depress ROSS' thumb- and/or fingers onto the fingerprint sensor of the digital device (only when the device has such a sensor), and direct which specific finger(s) and/or thumb(s) shall be depressed; and (2) hold the device in front of ROSS' face with his eyes^voluntarily open to activate the facial-, iris-, or retina-recognition feature, in order to gain access to the contents of any such device.  In depressing a person's thumb or finger onto a device and in holding a device in front of a person's face, law enforcement may not use excessive force, as defined in Graham v. Connor, 490 U.S. 386

(1989); specifically, law enforcement may use no more than objectively reasonable force in light of the facts and circumstances confronting them.

8.   The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.